UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FERRUCCIO A. ROMEO,<br><br>           Plaintiff,<br><br>v.<br><br>TOWN OF WINTHROP, TERENCE M. DELEHANTY, and AUSTIN FAISON,<br><br>           Defendants. | Case No. 22-cv-10573-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                              **May 23, 2023**

## I.   Introduction

Plaintiff Ferruccio A. Romeo ("Romeo") has filed this lawsuit against Defendants Town of Winthrop (the "Town"), Terence M. Delehanty ("Delehanty") and Austin Faison ("Faison") (collectively, "Defendants") alleging a variety of federal and state law claims relating to his employment as a Winthrop Police Sergeant. D. 22. Defendants have moved for dismissal only as to Counts I–III, D. 23, which allege 42 U.S.C. § 1983 liability for violating Romeo's federal rights (Count I), violations of the Americans With Disabilities Act ("ADA") (Count II), and violations of the Family and Medical Leave Act ("FMLA") (Count III) against all Defendants, D. 22. For the reasons stated below, the Court ALLOWS Defendants' partial motion to dismiss as to Count I, but only as to the claims against the Town, and Delehanty and Faison in their official capacities; Count II; and Count III. D. 23. The Court otherwise DENIES Defendants' partial motion to

1

dismiss, D. 23, and the case will proceed on the remainder of Count I and the other remaining claims, Counts IV–IX.

## II.     Standard of Review

A defendant may move to dismiss for a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To withstand a Rule 12(b)(6) challenge, the Court must determine if the complaint "plausibly narrate[s] a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (citations omitted).  First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein.  Id. (citation omitted).  Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit.  Id. (citation omitted). Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (quoting Iqbal, 556 U.S. at 678).

## III.    Factual Background

The following facts are drawn from Romeo's second amended complaint, D. 22, and are accepted as true for the purpose of resolving the pending motion to dismiss.

Romeo is a Winthrop Police Sergeant and served as the local union president of the Massachusetts Coalition of Police Officers Local 421-AFL-CIO for approximately ten years from December 2004 through February 2015. Id. ¶¶ 4, 9, 11.  In 2015, the Town of Winthrop terminated

Romeo's employment. Id. ¶ 12. After litigation before an arbitrator and the state courts, however, he was reinstated in July 2018. Id. ¶ 13.

On February 28, 2019, Romeo filed a request for intermittent leave pursuant to the FMLA to care for his aging parent and disabled spouse. Id. ¶ 14. Defendants approved that request. Id. On August 5, 2019, nineteen hours were deducted without notice from Romeo's accrued vacation hours to offset hours owed. Id. ¶ 15. Due to Romeo taking his approved intermittent FMLA leave, he was unable to attend trainings or perform other duties to offset the hours owed. Id. According to Romeo, he was not given additional time or opportunities to offset the hours owed, as customarily done by the Winthrop Police Department. Id. On August 8, 2019, he filed a grievance which was denied first by (Police Chief) Delehanty and then by (Town Manager) Faison. Id. ¶ 16.

Winthrop police officers are granted ten hours of "Time Due" for not using or abusing sick time within three consecutive months, for a total of forty hours per year. Id. ¶ 10. Pursuant to this policy, Romeo submitted a Time Due request on September 5, 2019 for not calling out sick between March 1, 2019 and August 31, 2019. Id. ¶ 17. After emailing to check the status of his request, Romeo was informed that his request was denied because he had used 294 hours of sick time between March 1, 2019 and August 29, 2019. Id. ¶ 19. Romeo contends that this was improper because he was not calling out sick, but rather using pre-approved, intermittent FMLA leave and opted to conserve his accrued sick time. Id. ¶¶ 19, 21. On December 23, 2019, he filed a grievance for not receiving Time Due. Id. ¶ 23. Faison denied that request on February 18, 2020. Id. ¶ 24. Romeo alleges that other Winthrop police officers have received Time Due, despite taking sick time. Id. ¶ 25.

On January 24, 2022, Romeo submitted a request for intermittent FMLA leave for a chronic medical condition. Id. ¶ 38. He alleges that after the request was pending for eighty-one days, the request was approved. Id.

Romeo also alleges that Defendants have interfered with his opportunities for promotions. After being reinstated in 2018, Romeo submitted a letter of interest to participate in a promotional examination for a Permanent Sergeant position. Id. ¶ 28. He also submitted a letter of interest for a Provisional Sergeant position posted by Delehanty. Id. ¶¶ 27, 29. Despite being given notice that he could participate in the promotional examination, Romeo did not receive any study materials and Defendants refused to postpone the examination. Id. ¶¶ 30, 31. Other officers submitted letters of interest in the Provisional Sergeant position and Romeo alleges that he had the most seniority, background, training, and experience of the officers who submitted letters of interest. Id. ¶ 32. Ultimately, Romeo was not offered the Provisional Sergeant position. Id. ¶ 33. Romeo also alleges that he was informed that he was not eligible to take a promotional examination for a Permanent Lieutenant position. Id. ¶ 36.

Romeo contends that Defendants have willfully violated the FMLA and interfered with his promotional opportunities because, during his tenure as the local union president, he "was a strong advocate for equal rights for female Police Officers" and "aided, counseled and assisted" female Winthrop Police Officers, Nancy Dalrymple ("Dalrymple") and Judy Racow ("Racow"), "in pursuing successful sex discrimination complaints at the Commission Against Discrimination, Equal Employment Opportunity Commission, Massachusetts Superior Court, Massachusetts Appeals Court, and U.S. District Court of Massachusetts." Id. ¶ 11; see id. ¶¶ 41, 43.

**IV.     Procedural History**

Romeo instituted this action on April 15, 2022, D. 1, and later amended his complaint, D. 22. Defendants moved to dismiss only Counts I–III. D. 23.

**V.      Discussion**

    **A.      <u>Count I (Section 1983 claim)</u>**

In Count I of Romeo's second amended complaint, he alleges that Defendants violated 42 U.S.C. § 1983 by discriminating against him. D. 22 ¶¶ 40–41.

        *1.      Section 1983 Claim Against the Town*

A municipality is not liable under 42 U.S.C. § 1983 solely because it employs a tortfeasor. <u>Monell v. Dep't of Soc. Servs. of the City of N.Y.</u>, 436 U.S. 658, 691 (1978). Instead, to prevail in a § 1983 action against a municipality, plaintiffs must prove that the violation of their rights occurred because of a municipality's policy or custom. <u>Baez v. Town of Brookline, Mass. Brookline Police</u>, 44 F.4th 79, 82 (1st Cir. 2022) (citing <u>Monell</u>, 436 U.S. at 694). Policies and customs can be both official or unofficial, so they "include[] the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011) (citing cases). Furthermore, under either scenario, the policy or custom "must have been the cause of and the moving force behind the deprivation." <u>Miller v. Kennebec Cnty.</u>, 219 F.3d 8, 12 (1st Cir. 2000) (citation and internal quotation marks omitted). Accordingly, "there are three elements to a § 1983 claim against a municipality: (1) a violation of the constitution or federal law; (2) a custom or policy of the municipality; and (3) causation between the custom or policy and the constitutional deprivation." <u>Off. of the Pub. Guardian v. Elliot Hosp.</u>, No. 21-cv-705-LM, 2022 WL 4104502, at *3 (D.N.H. Sept. 8, 2022).

Here, there is no plausible allegation that the Town has a formal or express policy instructing officials to retaliate against officers who advocate for the equal rights of female police officers. Romeo contends, however, that he can establish an unlawful policy or custom in the three following ways: (1) a person with final policymaking authority caused the deprivation; (2) failure to train or supervise; and (3) the existence of a custom of tolerance or acquiescence to federal rights violations. D. 27 at 10. None prove availing.

        a)        <u>Final Policymaking Authority</u>

Only officials who have final policymaking authority can subject their municipal employer to § 1983 liability through their actions. <u>St. Louis v. Praprotnik</u>, 485 U.S. 112, 127 (1988) (citation and internal quotation marks omitted). "Whether an official is a final policymaker is also a question of law." <u>Walden v. City of Providence</u>, 596 F.3d 38, 55 (1st Cir. 2010) (citing <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701, 737 (1989)). "This determination requires a showing that 'a deliberate choice to follow a course of action [was] made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" <u>Id.</u> at 55–56 (alteration in original) (quoting <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 483 (1986)). To determine whether an official has final policymaking authority, courts look to state and local law, "including 'valid local ordinances and regulations,' for descriptions of the duties and obligations of putative policymakers in the relevant area at issue." <u>Id.</u> at 56 (quoting <u>Praprotnik</u>, 485 U.S. at 125).

In the case at bar, Romeo suggests, without pointing to any state or local authority, that the Town Manager has final policy making authority regarding FMLA leave and promotional opportunities. D. 22 ¶ 7 (describing Faison, the Town Manager, as "responsible for the day to day operation of the Town . . . including oversight and supervision of all department heads, including

6

Police Chief . . . Delehanty"); D. 27 at 11.  These conclusory statements are insufficient.  See, e.g., Kelley v. Laforce, 288 F.3d 1, 10 (1st Cir. 2002) (affirming district court's ruling that the alleged constitutional violation was not caused by a municipal policy or custom where "appellants here have not offered any support for their allegation that Chief Darrin has such final policy-making authority under Massachusetts law"); Amatucci v. Young, No. 18-cv-1227-SM, 2021 WL 4477791, at *2 (D.N.H. Sept. 30, 2021) (dismissing Monell claim where the plaintiff "stated, without authority, that the title of 'Chief Deputy' suggests final policymaking authority within the Sheriff's Department" and "otherwise only made unsupported conclusory statements concerning Chief Deputy Young's policymaking authority").

Even assuming, *arguendo*, that Delehanty and Faison are final policymakers, that allegation is insufficient.  "A [c]ity is liable under Monell for the acts of a final policymaker only if those acts constitute deliberate indifference."  Saldivar v. Racine, 818 F.3d 14, 20 (1st Cir. 2016) (citing cases).  "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  Baez, 44 F.4th at 83 (quoting Connick, 563 U.S. at 61) (internal quotation marks omitted).  Such indifference can be inferred "if a municipality receives repeated complaints of civil rights violations . . . followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents."  Id. (citations and internal quotation marks omitted).  Here, the complaint lacks any allegations about similar civil rights violations.  Even as Romeo contends that the cases of the female police officers he supported in their discrimination claims "show that the Municipality ratified the illegal and unconstitutional acts they perpetrated," D. 27 at 11,  he has not proffered how those claims were similar to his or not or how they are part of a pattern of that plausibly constitutes deliberate indifference.

        b)        <u>Failure to Train or Supervise</u>

This same reasoning undercuts Romeo's failure to train or supervise claim. "A municipality is only liable for failure to train or supervise under § 1983 'where the failure to train amounts to deliberate indifference to the rights of persons with whom' the municipal agents come into contact." <u>Hewes v. Pangburn</u>, No. 1:21-cv-00125-JDL, 2022 WL 823924, at *6 (D. Me. Mar. 18, 2022) (quoting <u>DiRico v. City of Quincy</u>, 404 F.3d 464, 468 (1st Cir. 2005)). As Romeo has not demonstrated deliberate indifference above, he also fails here. More fundamentally, the second amended complaint is devoid of any facts relating to a failure to adequately train or supervise. <u>Id.</u> at *7 (dismissing § 1983 claim against municipality premised upon a failure to train or supervise where "the amended complaint does not allege facts indicating that the Department failed to adequately train its employees").

        c)        <u>Custom of Tolerance or Acquiescence of Federal Rights Violations</u>

Romeo cites Sixth Circuit caselaw for the proposition that a § 1983 plaintiff can demonstrate a municipality's illegal policy or custom by looking to "the existence of a custom of tolerance or acquiescence of federal rights violations." D. 27 at 10 (quoting <u>Jackson v. City of Cleveland</u>, 925 F.3d 793, 828 (6th Cir. 2019)). Romeo's claim fails because, even under Sixth Circuit caselaw that he cites, "a custom-of-tolerance claim requires a showing that there was a pattern of inadequately investigating similar claims." <u>Burgess v. Fischer</u>, 735 F.3d 462, 478 (6th Cir. 2013) (citing cases). As explained above, Romeo has not alleged similar claims within the Winthrop Police Department.

For at least these reasons, the Court dismisses Count I as to the Town.

### 2. Section 1983 Claim Against Defendants in Their Official Capacities

Romeo also asserts Count I against Delehanty and Faison in their official capacities. D. 22 ¶¶ 1, 41. A lawsuit against a municipal officer in their official capacity is a suit against the municipality itself, see, e.g., Kentucky v. Graham, 473 U.S. 159, 166 (1985) (citation omitted); Surprenant v. Rivas, 424 F.3d 5, 19 (1st Cir. 2005) (citing cases), so this claim fails for the same reasons.

### 3. Section 1983 Claim Against Defendants in Their Individual Capacities

Romeo also asserts Count I against Delehanty and Faison in their individual capacities. D. 22 ¶¶ 1, 41. To prevail on a § 1983 claim, a plaintiff must show that (1) the alleged conduct was committed under color of state law, and (2) the conduct deprived the plaintiff of rights secured by the Constitution or federal law. Collins v. Nuzzo, 244 F.3d 246, 250 (1st Cir. 2001) (citation omitted). There is no real dispute that Delehanty and Faison acted under of color state law. Defendants argue in their opposition that Romeo has not plead facts showing that Delehanty and Faison had any "personal involvement" with the alleged violations of federal law. D. 24 at 9. Throughout second amended complaint, however, Romeo alleges conduct that Delehanty and Faison were personally involved with, including, among other things, the deduction of accrued vacation hours, the denial and review of his grievances, and the refusal to award Time Due. D. 22 ¶¶ 10–38.

As to the second element, Romeo alleges that Defendants "abused their power and authority and acted in concert by aiding and abetting discrimination and Retaliation [sic] on the basis of Plaintiff's longstanding and ongoing and continuing advocating [sic] for women Police Offices for the Town of Winthrop for discrimination based upon sex." D. 22 ¶ 41. He fails to identify which federal statute Defendants violated in his description of Count I. Id. It is not

9

necessary for the Court to analyze every potential violation of federal law, because Romeo alleged elsewhere in the second amended complaint retaliation in violation of Title VII of the Civil Rights Act of 1964. Id. ¶¶ 1, 69–73. He, at least, has plausibly alleged retaliation in violation of Title VII, which can serve as the predicate federal rights violation for § 1983 liability.

"Title VII's anti-retaliation provision, 42 U.S.C. 2000e-3(a), states that it is unlawful for an employer to discriminate against an employee because 'he has opposed any practice made an unlawful employment practice . . ., or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing.'" Decaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008) (quoting 42 U.S.C. § 2000e-3(a)). In the absence of direct evidence, claims of retaliation under Title VII are evaluated using the McDonnell Douglas burden-shifting framework. Bibiloni Del Valle v. Puerto Rico, 661 F. Supp. 2d 155, 168 (D.P.R. 2009); see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04 (1973). "In order to establish a *prima facie* case of retaliation, a plaintiff must establish three elements. First, the plaintiff must show that he engaged in a protected activity. Second, the plaintiff must demonstrate he suffered a materially adverse action, which caused him harm, either inside or outside of the workplace. The impact of this harm must be sufficient to dissuade a reasonable worker from making or supporting a charge of discrimination. Third, the plaintiff must show that the adverse action taken against him was causally linked to his protected activity." Mariani-Colon v. Dep't of Homeland Sec., 511 F.3d 216, 223 (1st Cir. 2007) (internal citations omitted).

Romeo satisfies the first prong. Here, the second amended complaint alleges that Romeo "counsel[ed]" officers Dalrymple and Racow "in pursuing legal successful claims for sex discrimination" and that Defendants retaliated against him for assisting officers Dalrymple and Racow. D. 22 ¶ 1. This amounts to protected activity under Title VII. Fantini v. Salem State

Coll., 557 F.3d 22, 32 (1st Cir. 2009) (including within activity protected by Title VII "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under Title VII" (citation and internal quotation marks omitted)).

For an employment action to be considered materially adverse, the action must have been significant enough that it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (citation and internal quotation marks omitted). "This is an objective test and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances. . . . Examples of adverse employment actions in the retaliation context include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." Morales-Vallellanes v. Potter, 605 F.3d 27, 36 (1st Cir. 2010) (internal citations and quotation marks omitted).

Romeo alleges Defendants retaliated against him in the following ways: (1) they terminated his employment; (2) they deducted accrued vacation hours to offset hours owed and did not give another opportunity to offset the hours owed; (3) they denied his Time Due requests; (4) they denied his grievances; (5) they denied him promotions to Provisional Sergeant and Provisional Lieutenant; and (6) they delayed notification of the approval of his intermittent FMLA leave request. D. 22 ¶¶ 10–38. The First Circuit has concluded that several of these alleged employment actions are materially adverse, see, e.g., Morales-Vallellanes, 605 F.3d at 36 (termination of employment); Rathbun v. Autozone, Inc., 361 F.3d 62, 74 (1st Cir. 2004) (failure to promote), and, therefore, Romeo has plausibly pled that he suffered an adverse employment action.

11

"To show causation in a Title VII retaliation case, a plaintiff-employee must establish that his protected conduct was a 'but-for' cause of the adverse employment action." Murray v. Walmart Stores, Inc., No. 2:15-cv-00484-DBH, 2019 WL 6689900, at *11 (D. Me. Dec. 6, 2019) (quoting Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013)). Depending on the particular circumstances of the case, a close temporal connection between the protected conduct and the alleged retaliation can sufficiently establish causation. Calero-Cerezo v. U.S. Dep't of Just., 355 F.3d 6, 25 (1st Cir. 2004). Romeo's 2015 termination occurred while Dalrymple's litigation, which Romeo allegedly assisted, was ongoing. See Dalrymple v. Winthrop, 97 Mass. App. Ct. 547, 548–51 (2020) (detailing timeline and Dalrymple's litigation history against the Town).[1] Furthermore, after litigation required Romeo's reinstatement in July 2018, he was not given a Provisional Sergeant position a few months later, which he allegedly was the most qualified for among the applicants. D. 22 ¶¶ 26–34; see Sánchez-Rodríguez v. AT&T Mobility P.R., Inc., 673 F.3d 1, 15 (1st Cir. 2012) (finding a three-month gap between the plaintiff's EEOC complaint and his adverse employment action "close enough to suggest causation, especially given the inferences we must draw in [the plaintiff's] favor" and concluding that plaintiff had made out a prima facie case of retaliation even as the court affirmed summary judgment for defendant on plaintiff's failure to show that non-discriminatory reason for discipline was pretext).

Given that Romeo's *prima facie* burden "is not an onerous one," Calero-Cerezo, 355 F.3d at 26 (citation omitted), and that this Court is required to construe the facts in the light most favorable to Romeo, he has sufficiently stated a claim of Title VII retaliation. See Decaire, 530 F.3d at 19 (deeming a plaintiff's *prima facie* burden in a Title VII retaliation claim a "relatively

---

[1]On a motion to dismiss, the Court may take judicial notice of public records, including records from state court litigation. See Giragosian v. Ryan, 547 F.3d 59, 66 (1st Cir. 2008).

light burden" (citation and internal quotation marks omitted)).  As such, he has also stated a claim against Delehanty and Faison for § 1983 liability in their individual capacities.

### B.     Count II (ADA claim)

In Count II of Romeo's second amended complaint, he alleges that Defendants retaliated against him as a person with a disability in violation of the ADA.  D. 22 ¶¶ 42–43.  "A retaliation claim under the ADA is analyzed under the familiar burden-shifting framework drawn from cases arising under Title VII."  Kelley v. Corr. Med. Servs., 707 F.3d 108, 115 (1st Cir. 2013) (citing cases).  "To make out a prima facie retaliation claim, the plaintiff must show that:  (1) she engaged in protected conduct; (2) she experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action."  Id. (citation and internal quotation marks omitted).  Romeo's claim stumbles at each step.

In the second amended complaint, Romeo only makes one allegation which refers to a disability:  "On January 24, 2022 Plaintiff submitted a request for intermittent FMLA Leave to Defendants for a chronic medical condition for Calendar year 2022."  D. 22 ¶ 38.  He does not proceed to name the chronic medical condition, its symptoms, or how it substantially limits one or more of his major life activities.  See Carroll v. Xerox Corp., 294 F.3d 231, 238 (1st Cir. 2002) (explaining that the ADA's "disability requirement can be satisfied by demonstrating a physical or mental impairment that substantially limited one or more of [the plaintiff's] major life activities" (citing 42 U.S.C. § 12102(2)(A))).  In his opposition to Defendants' motion to dismiss, Romeo explains that he suffers from celiac disease, D. 27 at 15.

Even assuming Romeo included this allegation about his disability in his second amended complaint, his claim still fails.  The second amended complaint does not allege that he engaged in any conduct protected by the ADA, such as requesting an accommodation, Freadman v. Metro.

13

Prop. & Cas. Ins. Co., 484 F.3d 91, 106 (1st Cir. 2007) (citation omitted), or complaining of discrimination based upon disability, Valle-Arce v. P.R. Ports Auth., 651 F.3d 190, 198 (1st Cir. 2011). Rather, he submitted a request for intermittent FMLA leave. D. 22 ¶ 38. Romeo also fails to explain how the eighty-one-day delay in adjudicating his intermittent FMLA leave request would be considered materially adverse, especially where the request was ultimately granted. Id. Finally, the second amended complaint does not include any facts that would suggest causation between ADA-protected conduct and any adverse employment actions. Even as alleged, Romeo posits that Defendants were motivated to retaliate against him because he "assisted Dalrymple and Racow with successful legal claims against the Defendants," see id. ¶ 43, not because of any disability (i.e., celiac disease) or engaged in unnamed ADA-protected conduct.

Accordingly, the Court dismisses Count II of the second amended complaint.

### C. Count III (FMLA claim)

In Count III of Romeo's second amended complaint, he alleges that Defendants interfered with the benefits to which he is entitled to under the FMLA. D. 22 ¶¶ 1, 44–46. To state a *prima facie* interference claim, "an employee [must] show: (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave her employer notice of her intention to take leave; and (5) her employer denied her FMLA benefits to which she was entitled." Carrero-Ojeda v. Autoridad De Energía Eléctrica, 755 F.3d 711, 722 n.8 (1st Cir. 2014) (citing cases). A plaintiff must also demonstrate that the denial of FMLA benefits resulted in prejudice. Lopera v. Compass Grp. USA, Inc., 578 F. Supp. 3d 130, 135 (D. Mass. 2021) (citation omitted); see Tucker v. Town of Scarborough, No. 2:19-cv-00213-GZS, 2020 WL 3271936, at *5 (D. Me. June 17, 2020) (citing Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 90 (2002)) (same).

Defendants seem to suggest that Romeo's FMLA claim must fail because each time he requested FMLA leave, it was granted. D. 24 at 14. The FMLA, however, protects against more than just outright denials of leave. See, e.g., 29 C.F.R. § 825.220(b) (including "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave" as interference with an employee's FMLA rights). Indeed, in the second amended complaint, Romeo alleges other violations of his rights under the FMLA. Specifically, he contends Defendants violated the FMLA in the following ways: (1) Defendants deducted nineteen hours of accrued vacation time to offset hours owed and did not provide him with "additional time and a fair and reasonable opportunity to offset hours owed;" (2) Defendants refused to award him Time Due; and (3) Defendants delayed eighty-one days in adjudicating his intermittent FMLA leave request. D. 22 ¶¶ 15–25, 38.

### 1.   Deduction of Accrued Vacation Time

Romeo's FMLA interference claim based upon Defendants' alleged refusal to afford him an additional opportunity to make up the hours owed warrants dismissal. Even assuming the FMLA requires employers to give their employees on FMLA leave additional opportunities to make up hours owed, Romeo cannot demonstrate prejudice. The FMLA allows an employer to "require the employee, to substitute any of the accrued paid vacation leave, personal leave, or family leave of the employee . . . for any part of the 12-week period of such leave." 29 U.S.C. § 2612(d)(2)(A). This means that even if Defendants granted Romeo further opportunities to make up the hours owed and, therefore, keep his nineteen hours of accrued vacation time, Defendants would have still been within their rights to count those hours as FMLA leave. See, e.g., Twillie v. Erie Sch. Dist., 575 F. App'x 28, 33 (3d Cir. 2014) (stating that "[n]or did she assert that the Defendants asked her to use accrued paid leave to cover some or all of the FMLA that she took, which, as indicated, is authorized under the Act"); Mena-Valdez v. E.M. T-Shirts Distribs., Inc.,

869 F. Supp. 2d 252, 262 (D.P.R. 2012) (stating that "an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or family leave of the employee for any of the twelve-week leave provided under the FMLA" (citing 29 U.S.C. § 2612(d)(2)(A)). Consequently, Romeo would have been in the same circumstances regardless of any further opportunity to make up the hours. For, at least this reason, the Court dismisses Romeo's FMLA claim based upon this ground.

### 2.     *Denial of Time Due*

This same reasoning defeats Romeo's claim based upon the denial of Time Due. According to Romeo, the Winthrop Police Department grants ten hours of Time Due for not using or abusing sick time within three consecutive months, for a total of forty hours per year, and Romeo was denied that benefit because he used intermittent FMLA leave. D. 22 ¶¶ 10, 17–25. In denying Romeo's Time Due, Defendants explained that he had been compensated with sick time during his FMLA leave, so he did not attain the three months of not using sick time. Id. ¶ 19. Romeo argues that this violated the FMLA because he "opted" to conserve "his unused and accrued Sick Time as is permitted under the FMLA's guidelines and regulations" and thus not use his accrued sick time while on FMLA leave, thereby leaving him eligible for Time Due. Id. ¶ 21. The FMLA, however, allows an employer to "require the employee, to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave of the employee . . . for any part of the 12-week period of such leave." 29 U.S.C. § 2612(d)(2)(B). While Romeo might have preferred to conserve his accrued sick time, Defendants were statutorily authorized to consider portions of his FMLA leave as accrued sick time. See, e.g., Strickland v. Water Works & Sewer Bd., 239 F.3d 1199, 1204 (11th Cir. 2001) (stating that "[i]f an employer provides paid leave benefits to its employees, the Act provides that 'an eligible employee may elect, or an employer may require the

employee, to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave of the employee for . . . any part of the 12-week period' of FMLA leave" (quoting 29 U.S.C. § 2612(d)(2)(B)); Brotherhood of Maint. of Way Emps. v. CSX Transp., Inc., No. 03 C 9419, 2005 U.S. Dist. LEXIS 37950, at *4 (N.D. Ill. Dec. 28, 2005) (stating that "[t]he FMLA unequivocally permits the substitution of paid vacation, personal, or sick leave for FMLA leave"); Watkins v. J & S Oil Co., 977 F. Supp. 520, 523 n.1 (D. Me. 1997) (stating that the FMLA "expressly permits an employer to 'require the employee[] to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave of the employee for leave provided . . . for any part of the 12-week period'" (alteration in original) (quoting 29 U.S.C. § 2612(d)(2)(B)). Accordingly, Romeo's FMLA claim based upon this basis is dismissed.[2]

### 3. Eighty-One-Day Delay

On January 24, 2022, Romeo submitted a request for intermittent FMLA leave to Defendants, but it was approved after pending for eighty-one days. D. 22 ¶ 38. He has sufficiently plead a technical violation of his rights under the FMLA, because regulation requires employers to notify their employees of their eligibility to take FMLA leave after five business days. 29 C.F.R. § 825.300(b)(1); see Bellone v. Southwick-Tolland Reg'l Sch. Dist., 748 F.3d 418, 422 (1st Cir. 2014) (citing 29 C.F.R. § 825.300(b)(1)). Dismissal is, nevertheless, warranted because he has not satisfied the prejudice element. The only prejudice Romeo alleges is that this delay caused him emotional distress and substantial weight loss, D. 22 ¶¶ 38, 46, which he cannot recover damages for under the FMLA as a matter of law, see, e.g., Pagan-Colon v. Walgreens of San Patricio, Inc., 697 F.3d 1, 16 (1st Cir. 2012) (explaining that "a plaintiff may not recover damages for emotional

---

[2]As the Court grants dismissal on these grounds based upon alleged conduct in 2019, it does not reach Defendants' alternative argument that these parts of Romeo's FMLA claim are barred by the statute of limitations. D. 24 at 14–15.

distress under the FMLA" (citing Nev. Dep't of Hum. Res. v. Hibbs, 538 U.S. 721, 739–40 (2003)); Favreau v. Liberty Mut., Inc., 451 F. Supp. 3d 150, 168–69 (D. Mass. 2020) (dismissing claim for lack of sufficient notice because the plaintiff only alleged that "the lack of notice that her FMLA leave was approved prejudiced her because it caused her distress" and "it is not enough, for a showing of prejudice, to allege fear of not being able to leave or come back to work" (citation omitted)); Szabo v. Trustees of Bos. Univ., No. 96-cv-10806-GAO, 1998 WL 151272, at *6 (D. Mass. Mar. 18, 1998) (concluding that even if the plaintiff "can show that she suffered some emotional distress and worry at the uncertainty of not knowing what her job status would be," that "[l]oss of a sense of job security or the accompanying mental distress" is not an injury protected under the FMLA").  Accordingly, Defendants' motion to dismiss Romeo's FMLA interference claim based upon their alleged eighty-one-day delay is allowed.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Defendant's partial motion to dismiss, D. 23, as to Count I, but only as to the claims against the Town, and Delehanty and Faison in their official capacities; Count II; and Count III.  The Court otherwise DENIES Defendants' partial motion to dismiss, D. 23, so the case will proceed on the remainder of Count I, the § 1983 claim against Delehanty and Faison in their individual capacities, and Counts IV–IX.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge